**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RICHARD RAMSEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **2:04cv1735** |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

**I.      Introduction**

Plaintiff, Richard Ramsey, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c), for judicial review of the final determination of the Commissioner of Social Security ("Commissioner") which denied his application for supplemental security income ("SSI") and disability insurance benefits ("DIB") under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-403; 1381-1383(f).

**II.      Background**

**A.      Facts**

Plaintiff was born on November 23, 1960. R. at 256. He was placed in special education classes in the sixth grade, was retained twice, and dropped out of school in the eighth grade at age 17. R. at 21. He has past relevant work experience as a packer, lot attendant, sand blaster, grinder and assembly worker. R. at 21, 28, 252.

Plaintiff alleges disability as of May 8, 1996, due to degenerative disc disease, low intelligence and depression. The record reflects that Plaintiff has not engaged in substantial gainful work activity since alleging disability as of May 8, 1996. R. at 28.

### B.    Procedural History

Plaintiff initially filed an application for SSI and DIB on May 8, 1996, in which he claimed total disability since February 2, 1993.  R. at 20.  The claims were denied initially and on reconsideration, an administrative hearing was held on June 10, 1998 before Administrative Law Judge Kenneth R. Andrews ("ALJ Andrews").  R. at 20, 52-82, 125-33. ALJ Andrews denied Plaintiff's claims in a written decision dated August 28, 1998.  R. at 20, 125-33.  The Appeals Council granted Plaintiff's request for review and remanded the case for further action.  R. at 20.  A second hearing was held on November 21, 2000 before Administrative Law Judge David J. Kozma ("ALJ Kozma" or "the ALJ").  R. at 83-100.  In a written decision dated January 26, 2001, ALJ Kozma denied Plaintiff's claims.  R. at 20, 140-48.  The Appeals Council initially denied Plaintiff's request to review the decision of ALJ Kozma.  R. at 20.  However, Plaintiff submitted additional comments and evidence and on July 30, 2002, the Appeals Council granted the request for review and vacated the decision of January 26, 2001.  R. at 20, 186-88.  Additionally, the Appeals Council overturned a subsequent State Agency finding (based on a subsequent application for SSI filed on March 30, 2001) that Plaintiff met the requirements of Listing 12.05(C) (mental retardation) and, therefore, was disabled.  R. at 20-21, 186-88.  The prior claims and the claim filed on March 30, 2001 were consolidated and remanded to ALJ Kozma with specific instructions.  R. at 20, 186-88.

A third administrative hearing was held on March 14, 2003 before ALJ Kozma. R. at 20.  Plaintiff testified at the hearing and was represented by Brenda White, who is not an attorney.  R. at 20.  Plaintiff was also represented at the hearing by James Brown; the record does not reflect whether he is an attorney.  R. at 103.  L. Leon Reid, Ph.D., an impartial medical expert, and Samuel Edelmann, M.Ed., an impartial vocational expert, also testified at the hearing.  R. at 20, 113, 115.

On April 22, 2003, the ALJ rendered a decision which was unfavorable to Plaintiff in which he found that Plaintiff retained the ability to perform "simple, routine repetitive work that does not require exertion above the light level," provided that he could

"alternate sitting and standing at will."  R. at 26.  Therefore, the ALJ found that Plaintiff was not "disabled" within the meaning of the Act.  R. at 29.

The ALJ's decision became the final decision of the Commissioner on September 24, 2004, when the Appeals Council denied Plaintiff's request to review the decision of the ALJ.  R. at 10-12.

On November 16, 2004, Plaintiff filed his Complaint in this Court in which he seeks judicial review of the decision of the ALJ.  The parties have filed cross-motions for summary judgment.   Plaintiff contends that the ALJ erred 1) in determining that he did not meet the requirements of Listing 12.05(C), 2) in determining that his allegations regarding his limitations were not totally credible, and 3) in determining that he retained the ability to perform light work.  The Commissioner contends that the decision of the ALJ should be affirmed as it is supported by substantial evidence.  The Court agrees with the Plaintiff that the ALJ's credibility determination is not supported by substantial evidence, but finds that in all other respects the ALJ's decision is supported by substantial evidence.  Therefore, the parties cross-motions for summary judgment will be denied without prejudice and the action will be remanded to the Commissioner for reconsideration, rehearing and/or further proceedings consistent with this Memorandum Opinion.

III.     Legal Analysis

A.     Standard of Review

The Act limits judicial review of disability claims to the Commissioner's final decision.  42 U.S.C. §§ 405(g), 1383(c)(3).  If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court.  42 U.S.C. § 405(g); *Schaudeck v. Comm'n of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999).   The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  It consists of more than a

scintilla of evidence, but less than a preponderance. *Stunkard v. Secretary of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988).

When resolving the issue of whether an adult claimant is or is not disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). This process requires the Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work. *See* 42 U.S.C. § 404.1520; *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 118-19 (3d Cir. 2000) (*quoting Plummer v. Apfel*, 186, F.3d 422, 428 (3d Cir. 1999)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423 (d)(1) (1982). This may be done in two ways:

> (1) by introducing medical evidence that the claimant is disabled *per se* because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1. *See Heckler v. Campbell*, 461 U.S. 458 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777; or,
>
> (2) in the event that claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

In order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes plaintiff from returning to his or her former job. *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it is shown that claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, given claimant's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Stunkard*, 842 F.2d at 59;

4

*Kangas*, 823 F.2d at 777; *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986); *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

Where a claimant has multiple impairments which may not individually reach the level of severity necessary to qualify any one impairment for Listed Impairment status, the Commissioner nevertheless must consider all of the impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity.")

In this case, the ALJ determined that Plaintiff was not disabled within the meaning of the Act at the fifth step of the sequential evaluation process. In making this determination, the ALJ concluded that Plaintiff's degenerative disc disease and low average intellectual functioning are "severe" impairments under the applicable regulations. R. at 28. However, the ALJ found that Plaintiff "retains the residual functional capacity to perform simple, routine repetitive work that does not require exertion above the light level," with the added caveat that Plaintiff "would need to alternate sitting and standing at will." R. at 28. Although the ALJ found that Plaintiff was unable to perform his past relevant work, he found that Plaintiff could perform a significant number of jobs which exist in the national economy (*e.g.*, hand packer, sorter, grinder and assembler), and therefore was not disabled. R. at 29.

### B.    Discussion

As set forth in the Act and applicable case law, this Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986), *cert. denied.*, 482 U.S. 905 (1987). The Court must simply review the findings and conclusions of the ALJ to determine

whether they are supported by substantial evidence.  42 U.S.C. § 405(g);  *Schaudeck v. Comm'n. of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999).

>    1.    *Whether the Commissioner erred in determining that Plaintiff did not meet the requirements of Listing 12.05(C)?*

Plaintiff contends that the ALJ erred in not finding that he met the requirements of Listing 12.05(C).  The Court does not agree with Plaintiff and finds that the decision of the ALJ in that regard is supported by substantial evidence.

The pertinent provision reads:

> Mental Retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.  To meet listing 12.05(C), "a claimant must have i) have a valid verbal, performance or full scale IQ of 60 through 70, ii) have a physical or other mental impairment imposing additional and significant work-related limitations of function, and iii) show that the mental retardation was initially manifested during the developmental period (before age 22)."  *Markle v. Barnhart*, 324 F.3d 182, 187 (3d Cir. 2003).  "[W]here verbal, performance, and full scale IQs are provided, the Secretary must consider the lowest of these scores in conjunction with listing 12.05."  *Markle*, 324 F.3d at 186.  However, "the Commissioner is not required to accept a claimant's IQ scores and may reject scores that are inconsistent with the record."  *Id*.

Clarence Anderson ("Mr. Anderson"), a licensed psychologist, performed a psychological evaluation of Plaintiff on June 22, 2001 and found that he had verbal, performance and full-scale IQ scores of 67, 68 and 65, respectively.  R. at 389.  Mr. Anderson observed that Plaintiff "earned a Grade Score of Kindergarten" on the "Wide Range Achievement Test" and concluded that he "can be classified as Mildly Mentally Retarded."  R. at 393.  The report of Mr. Anderson also reflects the following:

> His reading was limited to fifteen letters of the alphabet that were
> presented plus the word in and cat (*sic*).  He called book-block, tree-
> three, how-who and could not pronounce the words animal, spell etc.
> (*sic*).  His arithmetic was limited to simple addition and subtraction
> without the carrying or borrowing operations.  He did two very simple
> multiplication problems with a single number multiplier.

R. at 393.

On March 11, 2003, Julie Uran, Ph.D. ("Dr. Uran"), a licensed psychologist,
performed a psychological disability evaluation on Plaintiff.  R. at 424.  The testing revealed
verbal, performance and full-scale IQ scores of 67, 72 and 66, respectively.  R. at 426.  Dr.
Uran observed that "[s]ight vocabulary skills were measured at a kindergarten level, spelling
first grade, and math at a second grade level."  R. at 426.

The ALJ rejected the test results of Dr. Uran and Mr. Anderson, and instead gave
"controlling weight" to a psychological evaluation performed on October 21, 1996 by
Shayen A. George, M.A. ("Mr. George"), a licensed psychologist.  R. at 23.  Mr. George's
intellectual assessment of Plaintiff yielded verbal, performance and full-scale IQ scores of
82, 82 and 81, respectively.  R. at 229.[1]  As Plaintiff points out in his brief, the issue is "was
the ALJ's decision to reject the Anderson and Uran tests supported by substantial evidence."
Plaintiff's Brief at 13.  Although the ALJ's resolution of this issue goes against the weight of
the evidence, the Court finds and rules that the ALJ's finding is nevertheless supported by
substantial evidence.

As mentioned above, "the Commissioner is not required to accept a claimant's IQ
scores and may reject scores that are inconsistent with the record."  *Markle*, 324 F.3d at 186.
However, "[a]n ALJ cannot reject IQ scores based on personal observations of the claimant
and speculative inferences drawn from the record."  *Morales v. Apfel*, 225 F.3d 310, 318 (3d
Cir. 2000).  Our court of appeals has not set forth an exhaustive list of relevant factors, but
the court of appeals' opinion in *Markle* indicates that an ALJ may consider the presence or

---

[1]     Dr. Uran recognized the difference between the scores she found and those found by
Mr. George, and she explained that the difference "can, at least partially, be attributable to different
versions of the testing instrument."  R. at 426.

absence of contradictory expert or medical opinions, the claimant's literacy, education and academic skills, work history, whether the claimant drives, and the claimant's other activities. *Markle*, 324 F.3d at 187.

The ALJ credited the scores of Mr. George, and rejected those of Dr. Uran and Mr. Anderson because their scores were "inconsistent with the other medical evidence of record" and inconsistent with the record as a whole. R. at 23. As for direct contradictory evidence, the psychological evaluation performed by Mr. George yielded verbal, performance and full-scale IQ scores of 82, 82 and 81, respectively. R. at 229. The report of Mr. George appears to be thorough and well-explained, and Plaintiff has not established, or even argued, that said report is somehow inherently defective. Significantly, Mr. George opined that Plaintiff should be capable of performing even semi-skilled work with minimum supervision. R. at 300. Additionally, while Plaintiff's literacy, education and academic skills are marginal at best, the record reflects that he is able to drive and has been employed in numerous jobs (albeit unskilled) in the private sector over the course of the last two decades. R. at 28, 107. This evidence is far from overwhelming, but it meets the threshold for "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" that Plaintiff's IQ is greater than 70. *Richardson*, 402 U.S. at 401. Therefore, the Court finds that the ALJ did not err in finding that Plaintiff did not meet the requirements of Listing 12.05(C).

2.      *Whether the Commissioner erred in determining that Plaintiff's allegations regarding his limitations were not totally credible?*

Plaintiff contends that the ALJ erred in determining that Plaintiff's allegations regarding his limitations were not entirely credible. Plaintiff's Brief at 15-19. The ALJ's discussion of Plaintiff's credibility is as follows:

> While I have taken into account the claimant's alleged symptoms, I did not find his testimony to be entirely credible. At the hearing, the claimant stated that he could not work because of back pain and depression. However, the claimant reported that he does not receive

> any mental health treatment and takes no psychotropic medication.
> Further, although the claimant indicated that he suffered from severe
> back pain, he also testified that he was able to grocery shop, cook,
> vacuum and wash dishes.  The claimant is able to read and perform
> addition and subtraction.  It appears the claimant is able to function
> quite well doing the activities that he wants to do.  This evidence
> negatively impacts on claimant's credibility in this proceeding.

R. at 26.

Credibility determinations by an ALJ need only be supported by substantial

evidence on the record as a whole.  *Miller v. Commissioner of Soc. Sec.*, 172 F.3d 303, 304

n.1 (3d Cir. 1999).  However, the Court agrees with Plaintiff that "the ALJ has either

misquoted or mischaracterized much of the evidence" upon which his credibility

determination was based.

Plaintiff alleged that he could not work due to, *inter alia*, depression.  The ALJ's

adverse credibility determination is based, in part, on the alleged fact that "he does not

receive any mental health treatment and takes no psychotropic medication."  R. at 26.

Plaintiff actually testified that he was treated for depression by Robert D. Multari, M.D.

("Dr. Multari"), his treating physician.  R. at 112.  According to Plaintiff's testimony, Dr.

Multari "gave [him] an anti-depressant pill for awhile," as well as "a couple other different

types of medications ..."  R. at 112-13.  Plaintiff testified that he couldn't take that

medication for very long, and he discontinued the medications because he "didn't want to

get that far dependent on something like that ..."  R. at 113.  Plaintiff also testified that Dr.

Multari did *not* want him to discontinue the depression medication.  R. at 113.  Although

perhaps not a wise decision, the Court cannot find Plaintiff's failure to take depression

medication reflects a lack of credibility, especially in light of the very rational explanation

proffered by Plaintiff.  As for his alleged lack of mental health treatment, it is clear that

Plaintiff essentially receives, or at least received, mental health treatment from Dr. Multari.

To the extent that the ALJ impliedly faults Plaintiff for not attending therapy and/or

counseling, there are numerous innocent explanations for the lack of such treatment, *e.g.*,

lack of health care coverage or lack of local providers.  In any event, the record does not

reflect exactly why Plaintiff does not receive therapy and/or counseling, and the ALJ's reliance on the lack of such evidence is questionable.

The ALJ stated that Plaintiff "is able to read and perform addition and subtraction," which presumably contradicted his contention that he was limited by low intelligence and/or mental retardation.  R. at 26.  However, Plaintiff actually testified that he has difficulty with reading and writing, reads newspapers "very rarely," needs help from his girlfriend to fill out job applications, and "can do a little basic math, but no division or times."  R. at 104-05.  This hardly makes Plaintiff an avid reader or skilled at arithmetic.  Plaintiff's testimony in that respect is also entirely consistent with the written reports of Dr. Uran and Mr. Anderson.  *See, e.g.*, R. at 426.  (Dr. Uran observed that "[s]ight vocabulary skills were measured at a kindergarten level, spelling first grade, and math at a second grade level."); R. at 393 (Mr. Anderson observed that Plaintiff "earned a Grade Score of Kindergarten" on the "Wide Range Achievement Test").  Although the report of Mr. George does not address Plaintiff's academic abilities in terms of grade level, said report does indicate that he falls within the "low average" range of intellectual abilities in many respects, which is not inconsistent with Plaintiff's testimony about his ability to read, add and subtract.  R. at 299-300.

The ALJ also observed that Plaintiff "testified that he was able to grocery shop, cook, vacuum and wash dishes."  R. at 26.  As for grocery shopping, Plaintiff actually testified *twice* that he "can't be in the grocery stores for very long periods of time" due to pain caused by walking and standing.  R. at 66, 107.  As for cooking, Plaintiff testified that he would "throw some stuff in the oven to cook once in awhile," which hardly indicates that Plaintiff is a serious cook.  R. at 109.  As for vacuuming, Plaintiff testified he vacuums the dining room "[m]aybe once a week," which "only takes a couple of minutes," but his son and girlfriend take care of most domestic duties.  R. at 65-66, 109.  With regard to washing dishes, Plaintiff testified that he "very rarely" did so, and would wash only "a few."  R. at 110.

As the Court sees it, the ALJ basically overstated or mischaracterized Plaintiff's testimony regarding his daily activities and mental health problems, then cited those artificial discrepancies as a justification for an adverse credibility determination. The Court is extremely hesitant to second-guess a credibility determination made by a factfinder who actually observed a witness testify. However, when an adverse credibility determination is based on mischaracterizations of the evidence and/or otherwise questionable logic, the Court is constrained to find and rule that the ALJ's credibility determination is not supported by substantial evidence.

3.   *Whether the Commissioner erred in determining that Plaintiff retained the residual functional capacity to perform light work?*

Plaintiff contends that the Commissioner erred in determining that he retains the residual functional capacity to perform light work. Plaintiff's Brief at 19-21. Specifically, Plaintiff points to evidence that three (3) consulting examiners and his treating physician agree that he is "functionally incapable of being engaged in substantial gainful activity." Plaintiff's Brief at 21.

In light of the discussion above regarding Plaintiff's credibility, the Court declines to address this issue. The Commissioner's findings on remand with respect the Plaintiff's credibility and his limitations may alter the outcome of the residual functional capacity analysis. If, however, the Commissioner again reaches step five of the sequential evaluation process, the Commissioner shall pose a hypothetical question to the vocational expert which accurately sets forth all of the limitations established by the evidence after reconsideration.[2]

---

[2]  The Court observes that Dr. Multari opined that Plaintiff was disabled due to depression and anxiety, which opinion the ALJ did not expressly address. R. at 22, 370. The Commissioner shall consider this opinion on remand and determine the weight to which it is entitled.

**IV.**     **Conclusion**

In light of the Court's finding that the ALJ's credibility determination is not supported by substantial evidence, the Court will remand this case to the Commissioner for further proceedings.  On remand, the Commissioner should reconsider whether Plaintiff's allegations regarding his physical limitations and depression support a finding that he is entitled to benefits for the relevant period.  The Commissioner should also reconsider whether the opinion of Dr. Multari compels a conclusion that Plaintiff is disabled due to anxiety and/or depression.

The Court acknowledges that when reviewing a decision to deny SSI and DIB, it is not this Court's function to substitute its judgment for that of the Commissioner.  The Commissioner's decision in the present case may otherwise be correct and nothing in this Memorandum Opinion should be taken to suggest that the Court has presently concluded otherwise.  However, in the absence of sufficient indication that the ALJ based his credibility determination on an accurate view of the evidence and/or acceptable reasoning, the Court cannot satisfy its obligation to determine whether or not the Commissioner's decision is supported by substantial evidence.  Therefore, this case will be remanded to the Commissioner for reconsideration, rehearing and/or further proceedings consistent with this Memorandum Opinion.  An appropriate Order follows.

McVerry, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RICHARD RAMSEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **2:04cv1735** |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER OF COURT**

AND NOW, this 31st day of March, 2006, in accordance with the foregoing

Memorandum Opinion, it is ORDERED, ADJUDGED and DECREED that:

1.   Plaintiff's Motion for Summary Judgment (*Document No. 7*) is **DENIED**

**WITHOUT PREJUDICE**;

2.   Defendant's Motion for Summary Judgment (*Document No. 9*) is **DENIED**

**WITHOUT PREJUDICE**;

3.   This action is **REMANDED FORTHWITH** to the Commissioner of Social

Security for reconsideration, rehearing and/or further proceedings consistent

with this Memorandum Opinion; and

4.   The Clerk will docket this case closed forthwith.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc:     Robert G. Yeatts, Esquire
Email: ryeatts@lewisandristvey.com

Lee Karl, Esquire
Email: lee.karl@usdoj.gov